In the US District Court for the District of Oregon

Benjamin Barber

vs

Oregon, et al

Case no 19-CV-01631-YY

Memorandum of Law in Support of Preliminary Injunction of ORS 163.472

## Table of Contents

| PG | |
|----|---|
| 1 | Table of Contents / Table of Statutes |
| 2 | Table of Authorities |
| 4 | ORS 163.472 "unlawful dissemination of an intimate image" |
| 6 | Standard of Review |
| 7 | Freedom of Speech |
| 8 | Content based speech restrictions |
| 16 | Prior restraints of speech |
| 18 | Copyright Preemption |
| 26 | Complete Preemption |
| 28 | Communications Decency Act Preemption |
| 31 | Commerce Clause Preemption |
| 33 | Due Process violations |
| 35 | Contract Clause Preemption |
| 36 | Taking Clause violations |

## Table of Statutes

| | |
|----|---|
| 4 | Oregon Revised Statute 163.472 |
| 18 | 17 USC § 301(a) |
| 19 | 17 USC § 201(e) |
| 29 | 47 USC § 230 |
| 7 | Amendment 1 to the US Constitution |

# Table of Authorities

27 | Briarpatch Ltd. L.P. v. Pheonix Pictures, Inc, 373 F.3d 296, 306-7

27 | Rociszewski v. Arete Associates Inc 1. F.3d 225, 232-233

27 | Globe Ranger Corp v. Software AG 836 F.3d 477

27 | Ritchie v. Williams 395 F.3d 283, 286-287

23, 27 | Laws v. Sony Music Entertainment Inc 448 F.3d 1134, 1146

27 | Voltage Pictures LLC v. Doe Civ No 6:14-cv-812-MC at 2-3 (D.OR)

27 | Dennis v. Hart 724 F.3d 1249, 1254

28 | Just Med v. Byce 600 F.3d 1118, 1124

29 | Batzel v. Smith 333 F.3d 1018, 1030

29 | Barrett v. Rosenthal 40 Cal 4th 33, 63

30 | Barnes v. Yahoo! Inc 570 F.3d 1096, 1101

31 | Backpage.Com LLC v. Mckenna 881 F.Supp 2d 1262, 1285

31 | Pike v. Bruce church, Inc 397 US 137, 142

32 | Wabash, St. L. & P. Ry.Co. v. Illinois 118 US 557

32 | American libraries Assoc. v. Pataki 969 F.Supp 160, 173

32 | Chicago Lawyers' Comm. for Civil Rights under law Inc v. Craigslist 519 F.3d 666

33 | Cline v. Frink Dairy Co 274 US 445

35 | Unites states v. Jeffries, 692 F.3d at 484

35 | Rodgers v. United States 442 US 35, 47

35 | United states v. Morrisette 342 US 246.

35 | Cochran v. United States 157 US 286, 294

35 | Elonis v. United states 135 S.ct. 2001, 2011

36 | Home Building & Loan Association v. Blaisdell 290 US 398, 431

36 | Connolly v. Pension Benefit Guar. Corp 475 US 211, 244-255

36 | Hawaii Housing Authority v. Midkiff 467 US 229

PAGE 3

# Table of Authorities

6,10 | R.A.V. v. St. Paul, 505 US 377, 382, 391

6,10,14 | United States v. Playboy Entertainment Group 529 US 803, 814, 817

6 | New York Times Co. v. United States 407 US 713

7 | Turner Broad. Sys. Inc., v. F.C.C. 512 US 622, 642

8 | Sorrell v. IMS Health Inc., 564 US 522, 511

9,13 | United States v. Stevens 130 S.ct. 1577, 1584-1586, 1591

10 | Sable Communications of Cal. Inc v. F.CC. 492 U.S. 115, 126

11 | Boos v. Barry 485 US 312, 321

12 | Brown v. Entertainment Merchants Association 564 US 786, 802

14 | Anderson v. Fisher Broadcasting Co 712 P. 2d 803, 810

16 | Beckerman v. City of Topelo 664 F.2d 502, 509-510

16 | Hill v. Colorado 530 US 703

17,23 | Maloney v. T3 Media Inc 853 F.3d 1004, 1011, 1019

17,23 | Garcia v. Google 786 F.3d 733, 745, 747

17 | Forsyth County v. Nationalist Movement 505 US 123, 131

18,19 | HR Rep no 1476 94th Cong 2d Sess 123-124, 130

20 | Montz v. Pligram Films & Television, 649 F.3d 975, 979

20 | Close v. Sotheby's 894 F.3d 1061, 1071

20 | Baltimore Orioles, Inc. v. Major League Baseball Players Association 805 F.2d 663, 676-677

20 | Grosso v. Miramax Film Corp 383 F.3d 965, 968

21 | Stewart v. Abend 495 US 207, 228-229

22 | State v. Oidor 292 P.3d 629, 633

24 | Monge v. Maya Magazines Inc 688 F.3d 1164

24 | Jules Jordan video Inc v. 144942 Canada Inc 617 F.3d 1146

26 | Veeck v. S. Bldg. Code Cong. Int'l. Inc 293 F.3d 791, 803

26 | Schnapper v. E. Foley 667 F.2d 102, 105

PAGE 2

ORS 163.472

"unlawful dissemination of an intimate image"

(1) A person commits the crime of unlawful dissemination of an intimate image if:

(a) The person, with the intent to harass, humiliate, or injure another person, knowingly causes to be disclosed through an internet website an identifiable image of the other person whose intimate parts are visible or who is engaged in sexual conduct;

(b) The person knows or reasonably should have known that the other person does not consent to the disclosure;

(c) The other person is harassed, humiliated, or injured by the disclosure; and

(d) A reasonable person would be harassed, humiliated, or injured by the disclosure.

(2)(a) Except as provided by paragraph (b) of this subsection, unlawful dissemination of an intimate image is a class A Misdemenor

(b) unlawful dissemination of an intimate image is a class C felony if the person has a prior conviction under this section at the time of the offense

(3) As used in this section:

(a) 'disclose' includes, but is not limited to, transfer, publish, distribute, exhibit, advertise, and offer.

(b) 'image' includes, but is not limited to, a photograph, film, videotape, recording, digital picture and other visual reproduction, regardless of the manner in which the image is stored

PAGE 4

(c) 'information Content provider' has the meaning given that term in 47 U.S.C. 230(f).

(d) 'interactive Computer service' has the meaning given that term in 47 U.S.C. 230(f).

(e) 'intimate parts' means uncovered human genitals, pubic areas or female nipples.

(f) 'sexual conduct' means sexual intercourse or oral or anal sexual intercourse, as those terms are defined in ORS 163.305, or masturbation.

(4) This section does not apply to:

(a) Activity by law enforcement agencies investigating and prosecuting criminal offenses;

(b) Legitimate medical, scientific or educational activities;

(c) Legal proceedings, when disclosure is consistant with common practice in civil proceedings or necessary for the proper functioning of the criminal justice system;

(d) The reporting of unlawful conduct to a law enforcement agency;

(e) Disclosures that serve a lawful public interest;

(f) Disclosure of images:

　(A) Depicting the other person voluntarily displaying, in a public area, the other person's intimate parts or engaging in sexual conduct; or

　(B) Originally created for a Commercial purpose with the Consent of the other person; or

(g) The provider of an interactive Computer service for an image of intimate parts provided by an information Content provider

## Standard of Review

"When the government seeks to restrict speech based on its content, the usual presumption of Constitutionality afforded congressional enactments is reversed 'content based regulations are presumptively invalid' R.A.V. v. St. Paul, 505 US. 377, 382 (1992), and the Government bears the burden to rebut that presumption"

United States v. Playboy Entertainment Group 529 US 803, 817

In construing a statute, the Court Should give effect to the plain Meaning of its language, unless the statute is ambigious or the plain Meaning would lead to absurd results that the legislature could have not possibly intended. In determining plain Meaning, the Court should employ the rules of grammar and usage, and presume that each word in a statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible. If a word or phrase has acquired a technical or particular meaning, the word or phrase should be construed accordingly. If after using these tools of Construction, the language of the statute is ambigious, then extratextual factors can be used to determine the statutes Meaning

"Any system of prior restraints" bears "a heavy presumption against Constitutional validity", the government "Carries a heavy burden of showing justification" New York Times vs U.S. 407 US 713

## Freedom of Speech

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right to peacefully assemble, and to petition the government for a redress of grievances"
Amendment 1 to the United States Constitution

Under the first Amendment, laws that, by their terms, distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based, whereas laws that confers benefits or impose burdens on speech without reference to the ideas or views expressed are content neutral. If it is neccessary to look at the content of the speech in question to decide if the speaker violated the law, the regulation is content based see Turner Broadcasting Systems Inc. v. Federal Communications Commission., 512 US. 622, 642

A Prior restraint is any system that requires a person to recieve a license prior to the speech taking place, or an order prohibiting speech from taking place before it occurs. The original system of prior restraints in england such as the Printing Act (1667) lapsed in 1695, and was replaced by the Statute of Anne in 1710 "An Act for the Encouraging of learning by Vesting Copies of Printed Books in the Authors or Purchasers of such Copies", the first copyright law in history not tied to government approval of the works contents

PAGE 7

ORS 163.472 is a content based restriction of speech because the law only regulates an "intimate image", and is viewpoint based because it only regulates views that would "harass, humiliate or injure" a person. The entire premise is that victim either adopts the viewpoint of being humiliated, or is injured by the viewpoints of others who watch the videos, and the defendant had intended to have those viewpoints adopted by them.

Harass vt: To subject persistantly and wrongfully to annoying, offensive or troubling behavior
(merriam webster Dichonary of law)
Injure vt 1 to interfere with or violate the legally protected interests of: as (a) to harm the physical, emotional or mental well being of
(merriam webster Dichonary of law)
Humiliate v: to cause (someone) to feel a loss of pride, dignity, self respect

"In the ordinary case it is all but dispotive to conclude that a law is content based and, in practice viewpoint discriminatory
Sorrell v. IMS Health Inc., 564 U.S. 522, 511 (2011)

Content based speech restrictions have only been permitted when confined to the few historic and traditional categories of expression. New categories of speech may not be added because certain speech is too harmful to be tolerated.

"From 1791 to present, however, the First Amendment has 'permitted restrictions upon the content of speech in a few limited areas', and has never 'included a freedom to disregard these traditional limitations.' These 'historic and traditional categories long familiar to the bar' including obscenity, deffamation, fraud, incitement, and speech integral to criminal conduct, are 'well-defined and narrowly limited classes of speech, the prevention and punishment of which have never thought to raise any Constitional problem"

United States v. Stevens, 130 S. Ct. 1577, 1584 (2010)

"The First Amendment's guarantee of free speech does not extend only to categories of speech that survive an ad hoc balancing of relative social costs and benefits. The First Amendment itself reflects a judgement by the American people that the benefits of its restrictions on the government outweigh the costs. Our Constitution fore closes any attempt to revise that judgement simply on the basis that some speech is not worth it."

Id at 1585

"our decisions in ferber and other cases cannot be taken as establishing a free wheeling authority to declare new categories of speech outside the first Amendment"

Id at 1586

PAGE 9

"what they mean is that these areas of speech can, consistantly with the first Amendment, be regulated because of their constitutionally proscribable content (obscenity, deffamation, etc) — not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content. Thus, the government may proscribe libel; but it may not make the further content discrimination of proscribing only libel critical of the government." R.A.V. v. St. Paul 505 U.S. 377, 391 (1992)

"[A] content based speech restriction, it can stand only if it satisfies strict scrutiny. Sable Communications of Cal., Inc. v. F.C.C. 492 U.S. 115, 126 (1989). If a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest. Ibid. If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative"..."Our precedents teach these principals. where the designed benefit of a content based speech restriction is to shield the sensibilities of listeners, the general rule is that the right of expression prevails, even where no less restrictive alternative exists." United States v Playboy Entertainment Group 529 U.S. 803, 814

PAGE 10

The State has mentioned that it is not the emotional impact
on listeners, but the emotional impact on the victim, and
that is a secondary effect of speech that can be regulated.
Though I hardly expect any injury to occur, unless it is
seen by a person whose emotions or views are impacted,
unlike say a person in a coma or not seen by anyone
at all, the argument is mooted in Boos v. Barry 485 US 312

"we have indicated that in a public debate, our own
citizens must tolerate insulting and even outrageous
speech in order to provide adequate breathing space
to the freedom protected by the first Amendment. A
dignity standard, like outrageousness, is so inherently
subjective that it would be inconsistent with our
long standing refusal to punish speech because the
speech in question may have an adverse emotional
impact on the audience"

"we spoke in that decision only of secondary effects of speech
, referring to regulations that apply to a particular category
of speech because the regulatory targets happen to be
associated with that type of speech. So long as the
justifications have nothing to do with content, i.e. the
desire to suppress crime has nothing to do with the
actual films being shown inside the adult movie theatres,
we concluded that the regulation was properly analyzed
as content neutral"
Boos v. Barry 485 US 312, 321

PAGE 11

Concluding that ORS 163.472 is a content based restriction, it violates strict scrutiny because it is not the least the restrictive means, because the statute is a criminal and not civil remedy. Moreover the statute is not narrowly tailored to fit the governments compelling interest.

The statute is under inclusive to prevent the stated goal of prevention, due to the fact that a person could be humiliated by means other than an intimate image see eg Brown v. Entertainment Merchants Association 131 S.ct 2729, 564 U.S. 786, 802

"under inclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint. see City of Ladue v. Gilleo, 512 U.S. 43, 51 (1994); Florida Star v. B.J.F. 491 U.S. 524, 540 (1989)."

The restriction to only images on the internet does not narrowly tailor the statute either, due to under inclusiveness

"what ever the challenges of applying the Constitution to ever-advancing technology, the basic principals of freedom of speech and the press, like the first Amendments command, do not vary' when a new and different medium for Communication appears" Id, 131 Sct 2729, 2733

"The most basic principal - that the government lacks the power to restrict expression because of its message ideas, subject matter, or content". Id

The limitation of liability from images that have 'legitimate medical, scientific or educational activities", is also not narrowly tailored see United States v. Stevens 130 S.ct 1577, 1591, due to over breadth of the regulation.

"In Miller we held that 'serious' value shields depictions of sex from regulation as obscenity. 413 U.S., at 24-25, 93 S.ct 2607. Limiting Miller's exception to 'serious' value ensured that '[a] quotation from Voltaire in the flyleaf of a book [would] not constitutionally redeem an otherwise obscene publication'. Id at 25, n.7, 93 S.ct 2607 (quoting Kois v. Wisconsin 408 U.S. 229, 231, 92 S.ct 2245, 33 L.Ed.2d 312 (1972)(per curiam)). We did not, however, determine that serious value could be used as a general precondition to protecting other types of speech in the first place. Most of what we say to one another lacks 'religious, political, scientific, educational, journalistic, historical or artistic value' (let alone serious value), but it is still sheltered from government regulation. Even '[w]holly neutral futilities... come under the protection of free speech as fully as do Keats' poems or Donne's semons' Cohen v California 403 US 15, 25, 91 Sct. 1780, 29 L.Ed 2d 284 (1971) (quoting Winters v. New York 333 U.S. 507, 528, 68 S.ct. 665, 92 L.Ed 840 (1948)"

PAGE 13

Nor are "dislosures that serve a lawful public interest a
narrow tailoring, because it is axiomatic that anything
which is lawful is not unlawful, and the decision what
constitutes a public interest lies with the speaker or viewer.

"The constitution exists precisely so that opinions and
judgements about art and literature can be formed,
tested, and expressed. What the constitution says
is that these judgements are for the individual
to make, not for the government to decree even
with the mandate or approval of a majority.
Technology expands the capacity to choose and it
denies the potential of this revolution if we assume
the government is best positioned to make these
choices for us"
United states v. Playboy Entertainment Group 529 US 803

"Likewise one readers or viewers 'news' is another's
tedium or trivia. The editorial judgement of what is
'news worthy' is not so readily submitted to the ad hoc
review of a jury as the Court of appeals believed. It is
not properly a community standard. Even when some
editors themselves vie to tailor 'news' to satisfy
popular tastes, others may believe that the
community should see or hear facts or ideas that
the majority finds uninteresting or offensive"
Anderson v. Fisher Broadcasting Company 712 P.2d 803, 810

PAGE 14

Nor does the exemption of images "originally created for a commercial purpose with the consent of the other person", narrowly tailor the statute, because the images could be commercially sold after a creation for some other purpose, with consent of the other person. Then, have collected the money, the person could then change their mind, and ask the videos be removed.

"[the state] The defendant asked the victim to make a site on Pornhub with him. She agreed and they created an account on Pornhub that they both had -- both of them had access to. The defendant and the victim had made videos of them having sex and they were uploaded to the site. Shortly after this, the victim changed her mind and didn't want these photos or videos on Pornhub anymore"
State v. Holten Case no A168404 (or appct) Transcripts Page 6

"[victim:] One day when I was visiting, we had talked about 'oh wouldn't that be interesting to make porn together? we could make alot of money.' But then, you know within a short period of time, we'd actually seriously talked about that and said 'no, that's not -- that's not something for us'"
State v. Barber Case no A163786 (or appct) Transcripts Page 272

PAGE 15

Nor does the qualification that the victim "does not Consent" to the disclosure, because the requirement is actually a prior restraint of speech, or invalidates a Contract made prior. It is a prior restraint because it requires Consent from the other person before the speech takes place, one form of a hecklers veto, if based on the emotional impact of the speech, or a Copyright claim, if based on intellectual property.

"This provision falls as an impermissable prior restraint upon free speech because it is not narrowly drawn to relate to health, safety and welfare interests, but instead it sanctions the denial of the permit on the basis of the so called "heckler's veto" see Coates v. City of Cincinnati 402 US. 611, 615, 91 S.ct. 1686, 1684, 29 L.Ed. 2d. 214 (1971) (state may not punish citizens for engaging in Conduct 'annoying' to others) Beckerman v. City of Topelo 664 F.2d 502, 509-510

"while we have in prior cases found governmental grants of power to private actors Constitutionally problematic, those Cases are distinguishable. In those Cases the regulations allowed a single, private actor to unilaterally Silence even as to willing listeners. see. eg Reno v. A.C.L.U. 521 US 844, 880 (1997) ("it would confer broad powers of censorship, in the form of a 'heckler's veto' upon any oponent of indecent speech") "
Hill v. Colorado 530 US 703 (2000)

PAGE 16

"When a likeness has been captured in a copyrighted artistic visual work, and the work itself is being distributed for personal use, a publicity right claim interferes with the exclusive rights of a copyright holder and is preempted by section 301 of the copyright act"
Maloney v. T3 Media Inc., 853 F.3d 1004, 1011 (9th 2017)

"To be sure this is not a garden variety of copyright infringment, such as to restrain the use of copyrighted computer code. The panel's takedown order of a film of substantial interest to the public is a classic prior restraint of speech. Alexander v. United States 509 US 544, 550"
Garcia v. Google 786 F.3d 733, 747 (9th 2015)

"A law subjecting the exercise of first Amend met freedoms to the prior restraint of a license 'must contain narrow, objective, and definite standards to guide the licensing authority' Shuttlesworth 394 US at 150-151; See also Niemotko, 340 US at 271. The reasoning is simple: if the permit scheme "involves appraisals of facts, the exercise of judgement, and the formation of an opinion" Cantwell v. Conneticut, 310 US 296, 305 (1940) by the licensing authority, "the danger of censorship and abridgement of our precious first Amendment freedoms is too great" to be permitted ...
South eastern Promotions Ltd v. Conrad 420 US 546, 533"
Forsyth County v. Nationalist Movement 505 US 123, 131

PAGE 17

## Copyright Preemption

The Statute violates Article VI of the U.S. Constitution "the Supremacy clause", because Congress had decided to expressly and completely preempt it with the Copyright act 17USC§201(e) and 17USC§301(a). Any allegation that there was any agreement to transfer or forfeit the rights in the Copyright act must be written 17USC§204.

17USC§301 states as follows:

"All legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of Copyright as specified by Section 106 and come under the Subject matter of Copyrights such as creative works, specified under Section 102, 103 are governed exclusively by this title

Thereafter, no person is entitled to any such right or equivalent right in any such work under the Common law or statutes of any state."

Congress "Intended [the Statute] to be stated in the clearest and most unequivocal language possible, so as to forclose any concievable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline between state and federal protection" HR Rep no. 1476 94th Cong 2d sess at 130 (1976)

PAGE 18

17 USC §201(e) states

"When an individual author's ownership of a copyright, or any of the exclusive rights under a copyright, have not previously been voluntarily transferred, no action by any governmental body or other official or organization purporting to sieze, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title"

Congress found:

"The purpose of this subsection is to reaffirm the basic principal that the United States copyright of an individual author shall be secured to that author, and cannot be taken away by any involuntary transfer. It is the intent of the subsection that the author be entitled, despite any purported expropriation or involuntary transfer, to continue exercising all rights under the United States Statute, and that the governmental body or organization may not enforce or exercise any rights under this title in that situation."

H.R. Rep. no 1476 94th Cong 2d sess at 123-124 (1976)

17 USC § 301 preempts the states claims if (1) "plaintiffs works come[s] within the subject matter of Copyright" and (2) the legal and equitable rights granted under state law "are equivalent to any of the exclusive rights within the general scope of Copyright" Mantz v. Pilgram Films & Television, 649 F.3d 975, 979 (9th cir 2011)

As for the first requirement, "the leading treatsie in this field recognizes that the scope of the subject matter of Copyright is broader than the protections it affords" Id. (Citing Nimme on Copyright § 19 D. 03 [A] [2] [b] (rev. ed 2010)). The Motion picture at issue, is a work of authorship under the Copyright act 17 US.C. § 102(a)(6)

As for the second requirement "§ 301(a), which precludes all legal and equitable rights within the general scope of Copyright even if they are not precisely within the contemplation of Copyright" Close v. Sotheby's 894 F.3d 1061, 1071 "A right is equivaent to one of the rights comprimised by a copyright if it is infringed by the mere act of reproduction, performance, distribution, or display" Baltimore Orioles, Inc. v. Major Leauge Baseball Players Association, 805 F.2d 663, 676-77. "we have found a state law claim preempted when the extra element changes the scope but not the fundemental nature of the right" Grosso v. Miramax Film Corp 383, F.3d 965, 968.

PAGE 20

Section 106 of the Copyright act provides a Copyright owner with the exclusive right to do and authorize the "reproduction, preparation of derivative works, distribution and display." Whereas ORS 163.472 is violated when "The person knows or reasonably should have known that the other person does not consent to the disclosure." Which is equivalent to the rights in the Copyright act because "In fact this court has held that a copyright owner has the Capacity arbitrarily to refuse to license one who seeks to exploit the work" Stewart v. Abend 495 U.S. 207, 229 (1990) and one who violates that right is liable under §501.

Deputy D.A. Marie Atwood stated:
"We're not talking about the content of the [images], the dissemination itself is the focus of the Statute State v. Barber case no. A163786 (or app ct) Transcripts Page 80

"If to say that if a person gives an image to somebody, that they give up any right to be offended for disseminating that image further is completely, I guess, backward from a lot of other crimes that we deal with in our community. For example, if you lend your car to a friend for a day and they never bring it back, it is not your fault for giving them permission initially, they're still guilty of unlawful use of a vehicle" Transcripts of Record case no A163786 (or app ct) Page 73, 74

PAGE 21

Victim testifies

"I reported the videos, and I just like, explained, you know, that I was reporting on part of these videos. I don't want them online. And, you know, it's a copyright issue"

Transcripts of Record Case no A163786 (or app ct) Page 246

"Applying the preemptive effect of section 301 to state civil but not criminal law could lead to the development of 'vague borderline areas' between federal and state protection of copy rights. Under the Copyright Act, a copyright holder is entitled to exclusive rights in his or her work for a defined duration, 17 USC § 302, and the copyright holder's exclusive rights are limited by principals such as fair use, 17 USC § 107. Conversely, ORS 164.865 (1)(b), by prohibiting the sale of a sound recording without the consent of its owner, provides the owner with perpetual protection that is not limited by copyright principals such as fair use. Thus if section 301 does not preempt ORS 164.865 (1)(b), then Oregon criminal law would provide copyright owners with different protections for their work from those that they have under the Copyright Act, in contravention of Congress's intent in enacting section 301."

State v. Oidor 292 P.3d 629, 633 (Or. ct. app. 2012)

PAGE 22

"Plaintiffs publicity right claim and derivative UCL claim challenge 'control of the artistic work itself' Laws, 448 F.3d at 1142. Pursuant to Laws, the subject matter of the state law claims therefore falls within the subject matter of copyright. We believe that our holding strikes the right balance"..." permitting photographers, the visual content licensing industry, art print services, the media, and the public, to use these culturally important images for expressive purposes. Plaintiffs position, by contrast, would give the subject of every photograph a defacto veto over the artist's rights under the Copyright Act, and destroy the exclusivity of rights that Congress sought to protect by enacting the Copyright act"

Maloney v. T3 Media Inc., 853 F.3d 1004, 1019 (9th 2017)

"This relief is not easily achieved under the Copyright law. Although we do not take lightly threats to life and emotional turmoil Garcia has endured, her harms are untethered from — and incompatible with — ( Copyright and Copyright's function as the engine of expression"..." Ultimately Garcia would like to have her connection to the film forgotten and stripped from Youtube. Unfortunately for Garcia, such a 'right to be forgotten' although recently affirmed by the Court of Justice for the European Union is not recognized in the United States"

Garcia v. Google 786 F.3d 733, 745 (9th 2015)

PAGE 23

"we pointedly note that we address the unpublished status of the photos only under copyright principals not privacy law. See Bond v. Blum 317 F.3d 385, 395 (4th cir 2003) ("the protection of privacy is not a function of copyright law"). ... "It may seem paradoxical to allow copyright to be obtained in secret documents, but it is not Federal Copyright is now available for unpublished works that the author intends to never see the light of day."
Monge v. Maya Magazines, Inc 688 F.3d 1164 (9th 2012)

"In the instant case we conclude that Gasper's right of publicity claim falls within the 'subject matter of copyright', and that the rights he asserts are equivalent to the rights within the scope of §106 of the Copyright Act. The essence of Gasper's claim is that the Kaytel defendants reproduced and distributed the DVD's without authorization. His claim is under the Copyright Act."
Jules Jordan Video Inc v. 144942 Canada Inc 617 F.3d 1146 (9th 2010)

Plaintiff Barber, registered his work with the Copyright office, entitled "Albino Porn" #VAU001282435 on 2016-12-23. The state acknowledges that he is the the author of the films, as does his victim. Holten was the Copyright holder, as acknowledged by the state.

PAGE 24

17 USC §201 states that copyright vests initially with the author, and 17 USC §101 states that copyright exists when an image is fixed in a tangible medium of expression eg recorded to film, memory card, or broadcasted.

"The defendant asked the victim to make a site on pornhub with him. She agreed and they created an account on Pornhub that they both had -- both of them had access to.
The defendant and the victim had made some videos of them having sex and they were uploaded to the site." (the state)
Transcript of Record case no A168404 (or app ct) Page 6

"The Court: Alright. So you were making images or videos and then also posting those somewhere publically?
Defendant: Yeah."
Transcript of Record case no A168404 (or app ct) Page 5

"They were made consentually and he had recorded them. I knew they were being recorded." (victim)
Transcript of Record case no A163786 (or app ct) Page 261

"one day when I was visiting we had talked about 'oh wouldn't that be interesting to make porn together? we could make a lot of money?" (victim)
Transcript of Record case no A163786 (or app ct) Page 272
PAGE 25

"Section 201(e) of the act reflects Congress's intention to protect Copyrights from involuntary appropriation by government entities"
Veeck v. S. Bldg. Code. Cong. Int'l, Inc., 293 F. 3d 791, 803

"we are aware that there is at least a theoretical possibility that some copyright laws may be used by some nations as instruments of censorship. Fears had been expressed, for example that the Soviet Union would, through use of a compulsory-assignment provision in its domestic copyright laws, attempt to prevent foreign publication"
Schnapper v. E. Foley 667 F. 2d 102, 105 (D.C. Cir 1981)

Just as the original licensing act in England, ORS 163.472 is a copyright law meant to prevent publication. Because it expropriates the exclusive rights of the author, to consent to publication, and transfers it to the subject ORS 163.472 violates 17 USC § 201(e) of the Copyright act.

## Complete Preemption

Numerous Courts, including the Ninth Circuit have found that the preemption provision of the Copyright act 17 USC § 301 completely preempts certain state law claims falling within its scope. Complete preemption means that all state law claims are converted into a federal claim, and like the artful pleading doctrine, is meant to prevent a party from avoiding federal law and Congressional authority

PAGE 26

See eg Briarpatch Ltd L.P. v. Pheonix pictures, Inc 373 F.3d 296, 306-307 (2d cir 2004); Rociszewski v. Arete Associates Inc 1. F.3d 225, 237-233 (4th cir 1993); Globe Range Corp v. Software AG 836 F.3d 477 (5th cir 2012); Ritchie v. Williams 395 F.3d 283, 286-287 (6th cir 2005) Laws v. Sony Music Entertain Ment Inc 448 F.3d 1134, 1146 (9th cir 2006) Voltage Pictures LLC v. Doe civ No 6:14-cv-812-MC at 2-3 (D. OR Jun 20 2014) (regarding 17USC§301)

"Complete preemption is a limited doctrine that applies only where a federal statutory Scheme is so Comprehensive that it entirely Supplants State law causes of action".

See also Dennis v. Hart 724 F.3d 1249, 1254 (9th cir 2013)

"Complete preemption is really a jurisdictional rather than a preemption doctrine, as it Confers exclusive federal jurisdiction in certain instances where Congress intended the Scope of federal law to be so broad as to entirely replace any State law claim".

See also Rociszewski v. Arete Associates Inc 1, F.3d, 225, 232-33

"The grant of exclusive jurisdiction to the federal Court over civil actions arising under the Copyright act, Combined with the preemptive force of see 301 ca1,"

"Compels the Conclusion that Congress intended the state law actions preempted by sec 301 (a) of the Copyright act arise under federal law. Accordingly we hold that the preemptive force of section 301(a) of the Copyright act transforms a state law complaint asserting claims that are preempted by sec 301 into a Complaint stating a federal claim for the purpose of a well pleaded Complaint rule. Since claims preempted by sec 301(a) arise under federal law, removal of actions raising those claims to a federal district Court is proper."

See also Just Med v. Byce 600 F. 3d 1118, 1124

"The T.B Harms test requires the District Court to exercise jurisdiction if (1) the complaint asks for a remedy expressly granted by the Copyright act (2) the complaint requires an interpretation of the Copyright act; or (3) federal principals should control the claim."... "under the artful pleading rule a plaintiff may not defeat removal by ommitting to plead necessary federal questions in a complaint."

## Communications Decency Act

The statute violates Article VI of the Constitution because it is expressly preempted by the Communications Decency Act 47 USC § 230. The act passed pursuant to Congress's Commerce Clause powers in Article 1 § 8 cl 3 prevents states from stifling free speech on the internet.

Congress intended "to preserve the vibrant and competitive free market that presently exists for the internet and other interactive computer services unfettered by Federal or State regulation" §230(b)(2), by providing that "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" §230(c)(1), and "no cause of action may be brought and no liability may be imposed under any state or local law that is inconsistant with this section §230(e)(3).

Though the statute provides immunity for providers of an interactive computer service, it does not provide immunity for users. Hence if a person sends me an intimate image over an interactive computer service, I am immunized if I post that image to a website that I operate, but I am not immune if I post that image to another website. see Batzel v. Smith 333 F. 3d 1018, 1030 ("the language of §230 (c)(1) confers immunity not just on 'provider' of such services, but on 'users' of such services"); Barrett v. Rosenthal 40 cal 4th 33, 63

"we conclude that there is no basis for deriving a special meaning for the term "user" in section 230(c)(1), or any operative distinction between "active" and "passive" internet use. By declaring that no "user" may be

PAGE 29

"treated as a "publisher" of third party content,
Congress has comprehensively immunized republication
by individual Internet users." Id

Congress chose to immunize against everything except
for federal intellectual property, and federal criminal
claims see eg Backpage.com, LLC v. McKenna 881
F. Supp 2d 1262, 1275 (W.D. Wa 2012) ("if Congress did not
want the CDA to apply in state criminal actions, it would
have said so"); Barnes v. Yahoo! Inc 570 F.3d 1096, 1101 (2009)

"But a law's scope differs from its genesis," Craigslist,
519 F.3d at 671, and the language of the statute does
not limit its application to deffamation cases. Indeed,
many causes of action might be premised on the
publication or speaking of what one might call
'information content'. A provider of information services
might get sued for violating anti-discrimination laws
, [...], for fraud, negligent misrepresentation, and
ordinary negligence [...]; for false light [...];
or even for negligent publication of advertisements
that cause harm to third parties [...]. Thus what
matters is not the name of the cause of action -
deffamation versus negligence versus intentional
infliction of emotional distress - what matters is
whether the cause of action inherently requires the
Court to treat the defendant as the 'publisher or
speaker' of content provided by another. To put it "
PAGE 30

"another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker'. If it does, section 230(c)(1) precludes liability."

## Interstate Commerce Clause

Congress has the ability to preempt the statute with its powers under the Commerce clause, Article1 section8 of the US Constitution, those powers "encompass an implicit or 'dormant' limitation on the authority of states to enact legislation affecting interstate Commerce" Backpage.Com, LLC v. McKenna 881 F.Supp 2d 1262, 1285

"where a state statute only has incidental effects on interstate commerce, the statute will be upheld '[w]here the statute regulates even-handedly to effectuate a legitimate local public interest," where "its effects on interstate commerce are only incidental," and where the burden imposed on interstate commerce is not 'clearly excessive in relation to the putative local benefits' Pike v. Bruce Church, Inc 397 U.S. 137, 142, 90 S.ct. 844, 25 L.Ed: 2d 174 (1970). '[T]he practical effect of the statute must be evaluated not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other states and what effect

"If not one, but many or every state adopted similar legislation' Healy, 491 U.S. at 336, 109 S.ct. 2491. Finally, there exist unique aspects of commerce that demand national treatment. See Wabash, St. L. & P. Ry. Co. v. Illinois, 118 U.S. 557, 7 S.ct. 4, 30 L.Ed. 244 (1886) (holding railroad rate exempt from state regulation.)"...

"The Internet is likely a unique aspect that demands national treatment. The internet is wholly insensitive to geographic distinctions' and itself 'represents an instrument of interstate commerce' Amer. Libraries Assoc. v. Pataki 969 F. Supp 160, 173 (S.D.N.Y. 1997) see also Chicago Lawyers' Comm. for civil rights under law, Inc. v. Craigs list 519 F.3d 666 (7th cir. 2008) ("online services are in some respects like the classified pages of newspapers but in others they operate like common carriers such as telephone services") Thus, '[t]he internet, like ... rail and highway traffic..., requires a cohesive national scheme of regulation so that users are reasonably able to determine their obligations') Pataki, 969 F. Supp at 182" Id

As for the first requirement, the statute directly targets the intellectual property and internet pornography industry, and the legislature did not weigh the burden imposed on interstate commerce, or the effects of how the patch work of state laws has effected interstate commerce.

## Due Process

ORS 163.472 is sufficiently vague that it violates due process of defendants

"The law must be precise enough to avoid so many factors of varying effect that neither the person to decide in advance, nor the jury after the fact can certainly judge the result"

Cline v. Frink Dairy Co 274 US 445

The language in the statute "causes to be disclosed" is vague. The legal cause is typically proximate cause, but in terms of the internet the person who requests the URL from the ISP is the proximate cause. If the standard is not proximate cause but rather a "but for" cause, the statute can be used vaguely by the jury to punish some one with an hacked or unprotected phone whose contents are uploaded by a third party, such as a nosy spouse investigating the cheater.

The language in the statute "identifiable image" is vague, rather than use "discernable", or "recognizable" the statute requires that the image it self be able to establish the identity of the other person. Obviously if a police officer asks for your identification, and you give him a naked photo, you have not identified yourself. However the statute is being used in such a way as to mean a recognizable image of the person, and the jury who sees the victim and has identified her in court, is asked if they can identify the image.

"disclosures that serve a lawful public interest" is vague, because it is axiomatic that what is lawful is not unlawful, so either the exemption subsection means not unlawful in a different way eg. like hacking, or that all disclosures that serve a public interest are lawful in this section. Moreover the term public interest can be read in two ways, those things that advance some interest of the public, or some image that is of interest to members of the public.

"A reasonable person would be harassed, humiliated, or injured" is vague, having decided that the person was "humiliated", the jury is asked to pass a judgement of the cultural value system of the person. For example whether a sharia law abiding woman, or a idigenous polynesian womans values are based on reason, one believes women's bodies should be covered because of god, the other frequently is naked outside due in part to humid tropical heat and in part due to no cultural taboo derived from religious belief.

"The person knows or reasonably should have known that the other person does not consent" is vague for several reasons. First is that is requires mind reading, even if a person did consent, a person needs to intuit whether they consent at the time, or a person may not even know the depicted person and cannot know if they consent or not. The second is that a negligence standard requires many more issues to weigh such as contributory negligence, duty of care, forseeability, prudence, and is why it is an impermisable rule.

PAGE 34

"Having liability turn on whether a "reasonable person" regards the Communication as a threat — regardless of what the defendant thinks — "reduces culpability on the all important element of the crime to negligence" Jeffries, 692 F.3d at 484 (Sutton, J. dubitante), and we "have long been reluctant to infer that a negligence standard was intended in criminal statutes" Rogers v. United States, 422 U.S. 35, 47, 95 S.ct 2091, 45 L.Ed. 2d 1 (1975) (Marshal J. Concurring) (citing Morisette, 342, U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288). See 1 C. Torcia, Wharton's Criminal Law § 27, pp. 171, 172 (15th ed. 1993); Cochran v. United States, 157 US. 286, 294, 15 S.Ct. 628, 39 L.Ed 704 (1895) (defendant could face "liability in a civil action for negligence, but he could only be held criminally for an evil intent actually existing in his mind"). Under these principals, "what [Elonis] thinks does matter."

Elonis v. United States 135 Sct 2001, 2011

## Contract Clause

The language of "does not consent" violates the Contract clause of the Oregon and U.S. Constitution, because it abrogates a previous agreement when the person did consent. Barber and the victim agreed to "have transparency and provide access to their social interactions including the ability to speak to members of ones social groups"

PAGE 35

Barbe's and Holten's victims had intially consented to make commercial pornography, but later changed their mind.

"The obligations of a Contract are impaired by a law which renders them invalid, or releases or extinguishes them [9] (Sturges v. Crownin shields, supra, pp 197, 198) and impairment, as above noted, has been predicated of laws which without destroying Contracts derogate from substantial Contractual rights"
Home Building & Loan Association v. Blaisdell 290 US 398, 431

## Taking Clause

The statute also takes intellectual property from the author or Copyright owner and gives it to the subject of the photograph. This is a regulatory taking, and one without due Compensation. It denies to the owner all economically viable use of a property, despite the expectations that the images would or could be commercialized, and the taking was coterminus with the governments police powers see Connaly v. Pension Benefit Guar. Corp. 475 US 211, 244-245

There is no literal requirement that the Condemned property be used by the general public, or that the beneficiaries be any considerable portion of the community Hawaii Housing Authority v. Midkiff 467 US 229. For example the videos "girls gone wild" can be discontinued under the statute, because the victims who were given beads, did not consent to their publication.
Date 10/21/2019         PAGE 36    /S/ Ben Barbe